JUDGE OETKEN



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRUCE GOONAN,

                Plaintiff,

   - against -

FEDERAL RESERVE BANK of NEW YORK,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12 CV 3859

ECF Case

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

        Plaintiff Bruce Goonan ("Goonan" or "plaintiff"), through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant Federal Reserve Bank of New York ("NY Fed" or "defendant") as follows:

### NATURE OF ACTION

        1.    Goonan was diagnosed with post-traumatic stress disorder ("PTSD") after the events of September 11, 2001 ("9/11"). Since then he has been in therapy, and had been actively managing his PTSD until his employer, the NY Fed, relocated him to a new office directly overlooking Ground Zero. As a result of the move, Goonan's PTSD was aggravated and he became depressed and suicidal. Goonan asked his employer for a simple accommodation: that he be permitted to work from one of the NY Fed's offices a few blocks away from the events of 9/11. The NY Fed refused. As a result, in August 2011, Goonan's twenty-five year career came to an end.

        2.    Goonan brings this action to remedy discrimination on the basis of disability and retaliation, including the failure to accommodate, under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"); the New York State Human Rights Law, Executive

432186 v3

Law § 290 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").

3. Goonan seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate equitable and legal relief pursuant to the ADA, the Executive Law and the City Law.

## PARTIES

4. Goonan is a resident of New York State who worked at the NY Fed for twenty-five years, until he was forced to retire in August 2011.

5. The NY Fed is one of twelve federal reserve banks that make up the Federal Reserve System. It has three offices in New York City. It is an employer within the meaning of the ADA, the Executive Law, and the City Law.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over Goonan's ADA claims pursuant to § 107(a) of the ADA, 42 U.S.C.A. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e-5(f)(1) and (3).

7. The Court has supplemental jurisdiction over Goonan's Executive Law and City Law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices complained of herein occurred within the Southern District of New York.

9. Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, Goonan served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

10. Goonan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 26, 2011, complaining of the acts of discrimination and retaliation alleged herein. On or about May 9, 2012, the EEOC issued a Right to Sue letter. Goonan has complied fully with the administrative prerequisites of the ADA.

## FACTUAL ALLEGATIONS

### Background

11. Goonan worked for twenty-five years in the Information Technology Department of the NY Fed. At the time his employment with the NY Fed ended, he was a salary Grade 15 Application Developer in the Technology Services Group ("TSG"). In his ten years in that position, he consistently met overall expectations.

12. During Goonan's twenty-five year tenure, he was progressively promoted to more senior positions with salary increases. He received a Mass Merit increase each year until 2010, when the NY Fed froze wages. Goonan was also repeatedly invited to participate in incentive contracts, and had received an incentive bonus in 2009.

13. Goonan never received a formal poor performance warning, was never placed on probation or subjected to the NY Fed's disciplinary procedure.

14. As an application developer, Goonan's duties were centered around application maintenance and coding new systems. Many of his essential job functions could be, and often were, performed remotely. Goonan frequently communicated with his supervisor,

Julie Sun-Jannes ("Sun-Jannes"), and his team members by e-mail and telephone. Goonan, like many of his fellow employees, was routinely permitted to work remotely.

15. On 9/11, Goonan was working in the NY Fed office, which was located two blocks from the World Trade Center ("WTC"). After the planes crashed into the towers, Goonan was trapped in his office and believed he was going to die.

16. Shortly after, Goonan began seeing a therapist to cope with the effects of his experience on 9/11. Goonan was diagnosed with PTSD and has been in therapy periodically over the past ten years. Despite suffering from PTSD, Goonan continued his successful career at the NY Fed from 2001 to 2010.

### The Move to 3 WFC

17. In or about January 2010, the NY Fed opened a new office located at 3 World Financial Center ("3 WFC") on the 23rd floor, which overlooked Ground Zero. Goonan's group was moved to 3 WFC. Prior to moving to 3 WFC, he worked at 2 Federal Reserve Plaza, which is across the street from the NY Fed's Main Building. Both of these locations are about a fifteen minute walk from 3 WFC. Goonan did not have to walk past Ground Zero to get to either of these locations. The NY Fed still has offices at 2 Federal Reserve Plaza and in the Main Building.

18. At the new location, Goonan maintained his schedule of working in the office Mondays through Thursdays and telecommuting on Fridays. Other employees in his group were also permitted to telecommute, as many of their job functions could be performed remotely. Telecommuting was usually done one day a week but was often extended to additional days as needed. Some of Goonan's colleagues were permitted to telecommute as often as five days a week.

19. In order to get to his new office at 3 WFC, Goonan had to walk past the WTC site. He began experiencing flashbacks to the events of 9/11 and developed severe difficulty sleeping, anxiety, and frequent suicidal thoughts. As a result of Goonan's symptoms, he had trouble concentrating at work. Goonan dreaded walking around the area of his office and became anxious and depressed as a result of being so close to the new rising tower at Ground Zero.

20. In or about late 2010, Goonan received a "below standard" rating for the first time in the years he had worked with his supervisor, Sun-Jannes.

21. Around that time, Goonan sought medical help. Goonan's doctors attributed his problems to PTSD and chronic major depression.

### Goonan's Request for an Accommodation

22. In or about March 2011, Goonan spoke with his supervisor, Sun-Jannes, about the difficulty he was having at work and requested an accommodation for his disability. Goonan asked that he be permitted to telecommute from home or move to the Main Building (which was only a few blocks away) where the NY Fed still had offices and his group already had some telecommuting cubicles set up. Sun-Jannes told Goonan to contact Dr. Gerald Stagg in the medical department of the NY Fed and ask to have Goonan's location changed. However, she warned Goonan that his request for an accommodation would be granted only if his performance improved. She told Goonan that telecommuting was a "privilege," and that it was important for Goonan to keep up with his work and performance. She said management could do more for Goonan if his performance improved and was consistent.

23. In or about March 2011, Goonan emailed Dr. Stagg and requested a meeting to discuss his request for an accommodation. Dr. Stagg told Goonan to set up a meeting

with the NY Fed's nurse, Lois Hitchcock ("Hitchcock"), and to bring letters from his doctors indicating his "diagnosis, how [his] work environment is impacting [his] condition and [his] ability to perform the essential functions of [his] job, any recommended modifications and the duration that any modifications would be necessary."

24.     On March 22, 2011, Goonan met with Hitchcock and again requested that the NY Fed accommodate his disability by permitting him to move to the Main Building or telecommute from home. Goonan explained that he was being treated for PTSD and that he wanted to change locations to allow time for the therapy to be effective. Goonan provided letters from his treatment providers, recommending that Goonan's work site be relocated to an environment more removed from the WTC site.

25.     On April 8, 2011, Goonan met with Harry Zimbalist ("Zimbalist"), Vice President of Application Development. Zimbalist told Goonan that his request for an accommodation was denied because Goonan was a poor performer and needed supervision.

26.     Zimbalist offered a number of alternatives, all of which required Goonan to work at the Ground Zero site. He suggested moving Goonan's cubicle to the other side of the floor, limiting Goonan's exposure to the windows facing the WTC site; using a white noise or environmental sound machine; listening to soothing music using a headset; a multi-spectrum light for Goonan's work area; dividing large assignments into smaller tasks and steps; weekly meetings with a supervisor or manager to determine if goals are being met; and assignments provided in writing via e-mail. Each of these options was insufficient because Goonan would still have to travel to the WTC site for work. Goonan's doctors agreed that if he continued to work at 3 WFC the effectiveness of his treatment would be severely limited and he would be unable to work to his full capacity.

27. After Goonan was told that his request had been denied, he contacted Leon Taub ("Taub"), Senior Vice President and Ombudsman. Goonan explained to Taub that his request for an accommodation had been denied. He told Taub that he was concerned that management did not understand the seriousness of his condition. He asked Taub to have management review its denial. Taub told Goonan that his request for an accommodation was denied because he was a poor performer.

28. Despite the fact that Goonan was told he was a poor performer and needed supervision, he was still permitted to telecommute on Fridays.

## The NY Fed Forced Goonan to Retire

29. Because the NY Fed refused to accommodate Goonan's condition, his symptoms of PTSD and major depression persisted. Among other things, Goonan continued to have suicidal thoughts. By May 2011, Goonan's working conditions were intolerable and he could no longer work at 3 WFC.

30. On May 24, 2011, Goonan notified Zimbalist of his intention to retire as the alternatives offered to him did not address the problems he was having with his work environment. Zimbalist replied that he was sorry that Goonan did not find any of the options acceptable. Neither he nor management made any further attempts to engage Goonan in discussions about his request for an accommodation.

31. Goonan's retirement became effective August 1, 2011.

## FIRST CAUSE OF ACTION

### (ADA – DISCRIMINATION)

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint as if set forth fully herein.

33. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the ADA. Plaintiff was able to perform the essential functions of the job with a reasonable accommodation, and therefore was at all relevant times a "qualified individual with a disability" within the meaning of the ADA.

34. By the acts and practices described above, defendant has discriminated against plaintiff on the basis of his disability, in violation of the ADA.

35. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

36. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## SECOND CAUSE OF ACTION

### (EXECUTIVE LAW – DISCRIMINATION)

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36 of this Complaint as if set forth fully herein.

38. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the Executive Law. Plaintiff's disability did not prevent him from performing his job with a reasonable accommodation.

39. By the acts and practices described above, defendant has discriminated against plaintiff on the basis of his disability, in violation of the Executive Law.

40. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## THIRD CAUSE OF ACTION

### (CITY LAW – DISCRIMINATION)

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint as if set forth fully herein.

42. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the City Law. Plaintiff's disability did not prevent him from satisfying the essential requisites of his job with a reasonable accommodation.

43. By the acts and practices described above, defendant has discriminated against plaintiff on the basis of his disability, in violation of the City Law.

44. Defendant knew that its actions constituted unlawful discrimination on the basis of plaintiff's disability and/or showed reckless disregard for plaintiff's statutorily protected rights.

45. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## FOURTH CAUSE OF ACTION

### (ADA – RETALIATION)

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint as if set forth fully herein.

47. By the acts and practices described above, defendant retaliated against plaintiff for his opposition to unlawful discrimination, in violation of the ADA.

48. Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

49. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory acts.

## FIFTH CAUSE OF ACTION

### (EXECUTIVE LAW – RETALIATION)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint as if set forth fully herein.

51. By the acts and practices described above, defendant retaliated against plaintiff for his opposition to unlawful discrimination, in violation of the Executive Law.

52. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory acts.

## SIXTH CAUSE OF ACTION

### (CITY LAW – RETALIATION)

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint as if set forth fully herein.

54. By the acts and practices described above, defendant retaliated against plaintiff for his opposition to unlawful discrimination, in violation of the City Law.

55. Defendant knew that its actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

56. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. declaring that the acts and practices complained of herein are in violation of the ADA, the Executive Law, and the City Law;

b. enjoining and permanently restraining these violations of the ADA, the Executive Law, and the City Law;

c. directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff;

d. directing defendant to place plaintiff in the position he would have occupied but for defendant's discriminatory and retaliatory conduct and making him whole for all earnings and other benefits he would have received but for defendant's discriminatory treatment, including, but not limited to, wages, bonuses, pension, and other lost benefits;

e. directing defendant to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering;

f. directing defendant to pay plaintiff punitive damages as provided by the ADA and the City Law;

g. awarding plaintiff his reasonable attorneys' fees and costs;

h. awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award; and

i. granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
       May 15, 2012

                          VLADECK, WALDMAN, ELIAS &
                          ENGELHARD, P.C.

                    By:   _____
                          Valdi Licul
                          Lara R. Corchado
                          Attorneys for Plaintiff
                          1501 Broadway, Suite 800
                          New York, New York 10036
                          (212) 403-7300